O

NO JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ANTONIO ZENDEJAS, | ) | Case No. CV 09-04858 DDP (JCx) |
| Plaintiff, | ) ) | **GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| v. | ) ) | [Motion filed on September 13, 2010] |
| COUNTY OF LOS ANGELES; LOS ANGELES COUNTY SHERIFF'S DEPARTMENT; LOS ANGELES COUNTY SHERIFF LEE BACA; LOS ANGELES COUNTY DEPUTY SHERIFF DON NELSON, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

In July 2008, Plaintiff Antonio Zendejas was charged with (1) rape and sodomy of an unconscious victim, in violation of California Penal Code §§ 261(a)(4), 268(f) and (2) rape and sodomy by drugs or controlled substance, in violation of California Penal Code §§ 261(a)(3), 268(i). In March 2009, Zendejas was acquitted on all charges. Now, Zendejas brings a 42 U.S.C. § 1983 action against the County of Los Angeles("CLA"), County of Los Angeles Sheriff's Department ("LASD"), and Los Angeles County Deputy Sheriff Don Nelson ("Nelson") (collectively "Defendants").

1  Zendejas alleges that Defendants violated his civil rights in
2  conjunction with his 2008 arrest.  In response, Defendants have
3  filed a Motion for Summary Judgment.  Having reviewed the parties'
4  moving papers and heard the parties' arguments, the court GRANTS
5  the motion.

6  **I.   Background**

7       On January 26, 2008, Jane Doe contacted the Los Angeles County
8  Sheriff Department in San Dimas and reported that she had been
9  raped by Antonio Zendejas ("Zendejas") during the night of January
10 25, 2008. (First Amended Complaint "FAC" ¶ 19.)  The Los Angeles
11 Sheriff's Department completed an incident report and took Jane
12 Doe's statement.  (Nelson Decl., Ex. A.)  In her  statement, Jane
13 Doe recounted that she had been drinking with Zendejas at his
14 restaurant the previous night.  (<u>Id.</u>)  She recalled having a beer
15 and three cocktails of cranberry and southern comfort whiskey.
16 (<u>Id.</u>)  She stated that Zendejas took her car keys at some point and
17 that she did not remember much from the night after that aside from
18 a few "flash" memories of being in a car with Zendejas and of being
19 in the lobby of the Red Roof Inn, where she felt "numb and robotic
20 like."  (<u>Id.</u>)   The next thing she remembers, she stated, was
21 waking up alone and completely naked at the Red Roof Inn.  (<u>Id.</u>)
22 She stated that she awoke sore vaginally and anally, and that she
23 felt she had been raped.  (<u>Id.</u>)

24      Jane Doe was taken to Pomona Valley Hospital where she was
25 examined by a Sexual Assault Response Team ("S.A.R.T.") nurse and
26 blood and urine were obtained for toxicology testing. (Nelson
27 Decl., Ex. A, B, C, D.).  Upon examination, the nurse found
28 significant tearing of both Jane Doe's vaginal and anal areas.

1  (Id., Ex. C, B.).  The nurse reported a large anal tear with a

2  blood clot.  (Id.)  After examining Jane Doe, the nurse reported to

3  Detective Nelson that the injuries would have been extremely

4  painful to endure consciously and that she believed drugs may have

5  been used to incapacitate Jane Doe.  (Id., Ex. C.)

6       Following the S.A.R.T. nurse's report and examination, Nelson

7  began his investigation into the alleged incident and Zendejas.  As

8  part of the investigation, Nelson took hair follicle samples from

9  Jane Doe, which were tested on May 21, 2008, and also arranged an

10 undercover investigation. (Nelson Decl., Ex. D.; Swiss Decl., Ex.

11 C.)  Detective Nelson and the Los Angeles County Sheriff Department

12 submitted the evidence obtained from the investigation to the

13 District Attorney's office along with a report.  The evidence

14 submitted included Jane Does's statement, toxicology results taken

15 from Jane Doe, the S.A.R.T. examination results and conclusions of

16 the examining nurse, a rental receipt from the Red Roof Inn that

17 had Zendejas' name on it, various messages between Jane Doe and

18 Zendejas, and a tape recorded statement from Zendejas obtained in

19 the course of the undercover investigation.

20      The District Attorney's office interviewed Jane Doe, and

21 thereafter filed criminal charges against Zendejas.  On June 30,

22 2008, Detective Nelson and Deputy District Attorney Rouman Ebrahim

23 signed a felony complaint for an arrest warrant, which included a

24 statement of probable cause prepared by Nelson, and submitted it to

25 the Los Angeles County Superior Court.  (Request for Judicial

26 Notice ("RJN"), Ex. C.) On July 1, 2008, the state court found

27 probable cause and signed the arrest warrant. (Id.)

28

1    Accordingly, on July 10, 2008, Zendejas was arrested and
2 charged with (1) Rape by Use of Drugs; (2) Rape of an Unconscious
3 Person; (3) Sodomy by Anesthesia or Controlled Substance; (4) and
4 Sodomy of an Unconscious Victim. (FAC ¶ 22).  On October 23, 2008,
5 a preliminary hearing was held. (Swiss Decl., Ex. C.) After hearing
6 both parties arguments, the state court issued an order requiring
7 Zendejas to answer the criminal charges. (Id.)

8    Following a five day jury trial in the Los Angeles County
9 Superior Court, Zendejas was acquitted by a jury on counts 1 and 3
10 while counts 2 and 4 were dismissed by the trial court.  After his
11 acquittal in state court, Zendejas filed the present suit. The
12 Defendants move for summary judgment.

13 **II.  Legal Standards**
14      **A.    Summary Judgment**

15    Summary judgment is appropriate where "the pleadings, the
16 discovery and disclosure materials on file, and any affidavits show
17 that there is no genuine issue as to any material fact and that the
18 movant is entitled to a judgment as a matter of law." Fed. R. Civ.
19 P. 56(c); see also Celotex Corp. v. Catrett , 477 U.S. 317, 324
20 (1986). In deciding a motion for summary judgment, the evidence is
21 viewed in the light most favorable to the non-moving party, and all
22 justifiable inferences are to be drawn in its favor.  Anderson v.
23 Liberty Lobby, Inc. , 477 U.S. 242, 255 (1986).

24    A genuine issue exists if "the evidence is such that a
25 reasonable jury could return a verdict for the nonmoving party,"
26 and material facts are those "that might affect the outcome of the
27 suit under the governing law."  Id. at 248.  No genuine issue of
28 fact exists "[w]here the record taken as a whole could not lead a

4

1  rational trier of fact to find for the non-moving party."

2  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

3  587 (1986).

4      It is not enough for a party opposing summary judgment to

5  "rest on mere allegations or denials of his pleadings." Anderson,

6  477 U.S. at 259. Instead, the nonmoving party must go beyond the

7  pleadings to designate specific facts showing that there is a

8  genuine issue for trial. Celotex, 477 U.S. at 325. The "mere

9  existence of a scintilla of evidence" in support of the nonmoving

10 party's claim is insufficient to defeat summary judgment.

11 Anderson, 477 U.S. at 252. "Credibility determination, the

12 weighing Of the evidence, and the drawing of legitimate inferences

13 from the facts are jury functions, not those of a judge [when he or

14 she] is ruling on a motion for summary judgment," Id. at 255.

**III. Discussion**

16     Where multiple constitutional violations are alleged, each

17 must be examined separately. Soldal v. Cook County, Ill., 506 U.S.

18 56, 70 (1992). Zendejas alleges in his complaint that his arrest,

19 one day detention, and trial constituted:

> 1) a false arrest, unlawful detention, and false imprisonment
> under the Fourth Amendment (Compl. ¶¶ 22, 27, 28.);
> 2) malicious prosecution under the Fourth Amendment (Compl. ¶
> 23.);
> 3) bodily harm, extreme pain, loss of life, liberty and
> freedom in  violation of the Fourth, Fifth, Eighth, and
> Fourteenth Amendments (Compl. ¶ 24.);
> 4) cruel and unusual punishment under the Eighth Amendment
> (Compl. ¶ 25.);
> 5) and a violation of equal protection and due process under
> the Fourteenth Amendment (Compl. ¶ 26.).

5

The parties, however, limit the arguments in their pleadings to the issues of false arrest and malicious prosecution.  All of Zendejas' § 1983 claims under the Fourth and Fourteenth Amendments appear to be premised on the arguments that (1) there was no probable cause for his arrest and (2) Detective Nelson failed to disclose and omitted information in his final arrest report and statement of probable cause.  (Pl.'s Opp'n 9:11-22, 10:8-16.) Accordingly, the court will first analyze the question of probable cause.

**A. Probable cause**

Zendejas' first claim is that Defendants violated his Fourth Amendment rights by arresting him without probable cause.  In particular, Zendejas alleges that Defendants secured a warrant for his arrest on the basis of an affidavit that omitted facts tending to show his innocence and misrepresented other facts.  (Compl. ¶¶ 22-24.)[1]

---

[1]  Defendants argue that Zendejas is collaterally estopped from challenging the existence of probable cause because the issue has already been resolved in at least one prior judicial determination.  (Def.'s Motion for Summary Judgment 14:12-19.)  In California, "a decision by a judge or magistrate to hold a defendant to answer after a preliminary hearing constitutes prima facie -- but not conclusive -- evidence of probable cause." Awabdy v. City of Adelanto, 368 F.3d 1062, 1067 (9th Cir. 2004). "[A] [civil] plaintiff [in a § 1983 action] can rebut a prima facie finding of probable cause [] by showing that the criminal prosecution was induced by fraud, corruption, perjury, fabricated evidence, or other wrongful conduct undertaken in bad faith." Awabdy, 368 F.3d at 1067.  Collateral estoppel also may not apply where a "defendant in the criminal proceeding had tactical reasons not to litigate the probable cause issue." McCutchen v. City of Montclair, 73 Cal. App. 4th 1138, 1147 (Cal. Ct. App. 1999); see also Haupt v. Dillard, 17 F.3d 285, 289 (9th Cir. 1994).  Here, Zendejas argues that "the determination of probable cause was induced by wrongdoing" and Defendants have not excluded the possibility that Zendejas lacked tactical reasons not to litigate
(continued...)

1    It is well established that a private party may bring an

2  action under § 1983 to challenge an improperly issued arrest

3  warrant. See Malley v. Briggs, 475 U.S. 335, 338-42 (1986); KRL v.

4  Estate of Moore, 512 F.3d 1184, 1190 (9th Cir. 2008).  Defendants

5  argue that Detective Nelson should be entitled to qualified

6  immunity because there is no evidence that Nelson acted in bad

7  faith, any false statements or omissions were not material, and

8  Nelson's belief that probable cause existed was reasonable.

9  (Def.'s Reply to Pl.'s Opp'n 11:15-28.)  In general, if the arrest

10  warrant is facially valid and there is no evidence of bad faith,

11  the officer enjoys qualified immunity unless "the warrant

12  application is so lacking in indicia of probable cause as to render

13  official belief in its existing unreasonable . . . ." Malley, 475

14  U.S. at 344-45.

15    Here, however, Zendejas does not contend that Detective

16  Nelson's warrant application lacked probable cause on its face.

17  Instead, Zendejas argues that Nelson recklessly omitted facts and

18  misled the state court when applying for the warrant, and that had

19  the court considered all of the facts, the court would not have

20  found probable cause. (Opp'n to Def.'s Mot. 12-13: 28-10.)

21    To maintain a false arrest claim for judicial deception, a

22  plaintiff must show that the officer who applied for the arrest

23  warrant "deliberately or recklessly made false statements or

24  omissions that were material to the finding of probable cause."

25

26

---

27    [1](...continued)
the probable cause issue fully during the preliminary hearing.

28  (Pl.'s Opp. 19:27-28.)   Therefore, the court considers Zendejas'
argument that the Defendants lacked probable cause to arrest him.

KRL, 384 F.3d at 1117; see also Franks v. Delaware, 438 U.S. 154,
171-72 (1978).  The materiality element - a question for the court,
see Franks, 438 U.S. at 171 - requires the plaintiff to demonstrate
that "the [court] would not have issued the warrant with false
information redacted, or omitted information restored."  Lombardi
v. City of El Cajon, 117 F.3d 1117, 1126 (9th Cir. 1997); see Ewing
v. City of Stockton, 588 F.3d 1218, 1224-25 (9th Cir. 2009)
(concluding that a warrant application's two false statements were
not material because other detailed, reliable information was
sufficient to establish probable cause).

       Here, both parties agree that the medical records reported
that Jane Doe had small and large tearing of her vaginal and anal
areas.  There is no dispute that the S.A.R.T. nurse reported to
Nelson that Jane Doe's injuries would have been extremely painful
to endure consciously.  There is also no dispute that Jane Doe was
out drinking with Zendejas at his restaurant the night before the
alleged rape, and that Zendejas and Jane Doe spent the night
together at the Red Roof Inn the evening of January 25.  The
parties disagree, however, as to the correct interpretation of
certain email and recorded statements made by Zendejas and by Jane
Doe after the incident.  Zendejas further contends that the court
would not have issued the arrest warrant if Detective Nelson's
warrant application had included (1) the full context of Zendejas'
email and conversation statements to Jane Doe subsequent to the
alleged incident, (2) a statement from Red Roof Inn clerk Lisa
DeAnada, and (3) interviews with corresponding statements from
individuals from the restaurant who saw Zendejas and Jane Doe the
night of the alleged incident.

1    The court must, therefore, consider whether information
2    presented in Detective Nelson's statement of probable cause was
3    indeed improperly presented and omitted as alleged.  If it was, the
4    court must determine if a "[court] would not have issued the
5    [arrest] warrant with false information redacted, or omitted
6    information restored."  Lombardi, 117 F.3d at 1126.

7        In the case of an alleged rape, to establish probable cause
8    the state would generally be expected to investigate (1) any and
9    all physical evidence of rape and (2) the credibility of the
10   alleged victim.  Here, Defendants presented the court that issued
11   the arrest warrant with credible physical evidence.  The examining
12   S.A.R.T. nurse reported significant tearing in both Jane Doe's
13   vaginal and anal areas.  (Nelson Decl., Ex. B.)  The examining
14   S.A.R.T. nurse further reported that in her medical opinion such
15   tearing would have been extremely painful to endure had Jane Doe
16   been conscious at the time.  (Id.)  Zendejas does not dispute the
17   credibility of the S.A.R.T. nurse.

18       The Defendants, however, despite waiting months before seeking
19   an arrest warrant, conducted minimal investigation relating to Jane
20   Doe's credibility.  The law does not require a perfect
21   investigation, but - without any investigation into Jane Doe's
22   credibility - it cannot be said that the investigation conducted in
23   this case was a thorough investigation.  Jane Doe stated that
24   before the incident she felt "robotic" and "numb." (Nelson Decl.,
25   Ex. B.)  Yet, Nelson did not interview the Red Roof Inn clerk who
26   was the last person to see Jane Doe with Zendejas before the
27   alleged incident.  Nelson also did not interview any of the other
28

9

patrons or employees of the restaurant who saw Jane Doe with Zendejas on the evening of January 25 and who may have been able to corroborate or discredit her account of events.  Although the impressions and recollections of the lobby clerk and the other patrons would not have been conclusive evidence of Jane Doe's state of mind and whether or not she was under the influence of a drug or other controlled substance at the time of the alleged rape, they would have helped construct a more thorough account of the night and Jane Doe's capacity just hours before the alleged incident. Nelson himself conceded that he should have interviewed the Red Roof Inn clerk, the last person to see Zendejas and Jane Doe before the alleged crime occurred.

Furthermore, the report submitted by Nelson to the District Attorney's office and subsequently to the court in support of the arrest warrant was less than forthright.  Zendejas' statement that he "knocked" Jane Doe "out" was presented as an unambiguous admission that he had drugged and then raped her.  The statement, however, was taken out of context.  At best, Zendejas' tape recorded conversation with Jane Doe is a clear admissions that the two had intercourse.  The conversation, however, is ambiguous as to whether that intercourse was consensual or involved a date rape drug.

That point made, the fact remains that the physical evidence in this case and the S.A.R.T. nurse's report were compelling. Despite the lack of inquiry into Jane Doe's credibility, the court is persuaded that the physical evidence, coupled with the District Attorney's interview of Jane Doe, was enough in this instance to

warrant a person "of reasonable caution" to believe that Jane Doe
was raped and sodomized by Zendejas as alleged. <u>Michigan v.
DeFillippo</u>, 443 U.S. 31, 37 (1979). "Probable cause to arrest
exists when officers have knowledge or reasonably trustworthy
information sufficient to lead a person of reasonable caution to
believe that an offense has been . . . committed by the person
being arrested." <u>United States v. Lopez</u>, 482 F.3d 1067, 1072 (9th
Cir. 2007) (citing <u>Beck v. Ohio</u>, 379 U.S. 89, 91 (1964)).
"[C]onclusive evidence of guilt is of course not necessary . . . to
establish probable cause;" but, "mere suspicion, common rumor, or
even strong reason to suspect are not enough. " <u>Torres v. City of
L.A.</u>, 548 F.3d 1197, 1206 (9th Cir. 2008). Here, "under the
totality of circumstances known to the arresting officers, a
prudent person would have concluded that there was a fair
probability that [Zendejas] had committed a crime." <u>United States
v. Smith</u>, 790 F.2d 789, 792 (9th Cir. 1986). The omissions and
misrepresentations in the warrant application, even if corrected,
do not compel the conclusion that "a neutral [] judge would not
have issued a warrant," and are therefore not material. <u>Lombardi</u>,
117 F.3d at 1126. The court concludes that Detective Nelson had
probable cause to arrest Zendejas and is immune from suit. <u>See
Haupt</u>, 17 F.3d at 288.

### B.  Remaining constitutional claims
#### 1.  <u>Unreasonable Seizure and Malicious Prosecution -
Fourth Amendment</u>

"An arrest without probable cause violates the Fourth
Amendment and gives rise to a claim for damages under § 1983."
<u>Borunda v. Richmond</u>, 885 F.2d 1384, 1391 (9th Cir. 1988).

Similarly, for a malicious prosecution claim under the Fourth Amendment, a plaintiff must prove prosecution without probable cause.  Freeman v. City of Santa Ana, 68 F.3d 1180, 1189 (9th Cir. 1995).  A criminal defendant may maintain a malicious prosecution claim not only against prosecutors but also against others - including police officers and investigators - who wrongfully caused his prosecution.  See Galbraith v. County of Santa Clara, 307 F.3d 1119, 1126 (9th Cir. 2002).  To maintain a § 1983 action for malicious prosecution, a plaintiff must show that "the defendants prosecuted [him] with malice and without probable cause, and that they did so for the purpose of denying [him a] specific constitutional right."  Freeman v. City of Santa Ana, 68 F.3d 1180, 1189 (9th Cir. 1995); see also Lassiter v. City of Bremerton, 556 F.3d 1049, 1054-55 (9th Cir. 2009) ("[P]robable cause is an absolute defense to malicious prosecution.").

Zendejas' argument for these claims is based on the absence of probable cause at his arrest by Detective Nelson.  As the court has found that probable cause existed to arrest Zendejas, his Fourth Amendment claims for false arrest and malicious prosecution fail as a matter of law.

2.   Substantive Due Process - Fourteenth Amendment

a.   False Arrest and Malicious Prosecution

Plaintiff's claims for false arrest and malicious prosecution fall squarely under the Fourth Amendment and must be analyzed according to its principles, rather than any generalized notion of substantive due process.  See County of Sacramento v. Lewis, 523 U.S. 833, 843 (1998).  Accordingly, to the degree Zendejas' due

process claims under the Fourteenth Amendment are premised on his alleged unlawful arrest or the absence of probable cause, they are dismissed.

### 4.   Cruel and Unusual Punishment - Eigth Amendment

The Eigth Amendment does not apply where the government has not "secured a formal adjudication of guilt." Bell v. Wolfish, 441 U.S. 520, 537 n.17 (U.S. 1979)(internal quotation omitted).

As Zendejas was acquitted at trial, the Eigth Amendment is not applicable here and this claim is dismissed.

### 5.   Remaining Constitutional Claims

Defendants' motion is styled as a motion for summary judgment and purports to address all of Zendejas' claims, but it does not expressly analyze Plaintiff's § 1983 claims for (1) a violation of procedural due process under the Fourteenth Amendment or (2) a violation of equal protection under the Fourteenth Amendment. Instead, Defendants treat these claims as claims for false arrest, false imprisonment, and malicious prosecution. Zendejas does not dispute this characterization and none of Zendejas' argument addresses his claims for equal protection or procedural due process. In effect, Defendants' argument is that Zendejas has not raised sufficient evidence to support his procedural due process or equal protection claims. On a motion for summary judgment, the moving party may carry its burden by showing that the non-moving party does not have evidence supporting an essential element of its cause of action. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).

Therefore, Zendejas has presented no evidence supporting or creating a genuine dispute of material fact on these claims, they are dismissed as a matter of law.

**C.   *Monell* Liability**

As Zendejas claims for violation of his civil rights fail, the court declines to address the issues of municipal liability.

**IV.   CONCLUSION**

For the foregoing reasons, the court is inclined to GRANT the motion for summary judgment.[2]

IT IS SO ORDERED.

Dated: November 1, 2010

DEAN D. PREGERSON
United States District Judge

---

[2]   To the extent that Zendejas raises his claims under state law, the court declines to exercise supplemental jurisdiction over those claims and they are dismissed without prejudice.